M. D. FITTERLING, APPELLANT, v. JOHNSON COUNTY MUTUAL FIRE INSURANCE COMPANY ET AL., RESPONDENTS.—112 S. W. (2d) 347.

Kansas City Court of Appeals. January 21, 1938.

A. R. Thompson, Jr., and John T. Martin for appellant.

T. C. Owen and Russell L. Garnett for respondents.

BLAND, J.—This is an action upon a fire insurance policy. The case was tried as a suit in equity, resulting in a decree that plaintiff be paid by the defendant, insurance company, one-fourth of the insurance left after paying certain taxes and a fee of $50 to the attorney for the defendant, insurance company; that the remainder be paid to the defendant, Presbyterian Orphanage of Missouri, and that it should reimburse plaintiff in the sum of $16.50 for its proportionate part of the insurance premiums paid by him. Plaintiff has appealed.

The facts as nearly as they can be stated, in view of the failure of the parties to introduce evidence of material dates and other matters, show that Elmer and M. S. Fitterling, brothers, owned a farm in Johnson county upon which a barn, the subject of the insurance

in question, was situated; that Elmer Fitterling owned a three-fourths interest and his brother a one-fourth interest in the farm, the two holding it as tenants in common; that on or about September 21, 1931, the policy in suit was issued to them, insuring, among other property, the barn in question for $500. The policy was for a term beginning September 21, 1931, and ending September 21, 1936. It was issued to the brothers and "their legal representatives."

On December 24, 1932, Elmer Fitterling died while the policy was still in force, leaving a will, not introduced in evidence, but it is admitted in the briefs that it devised the property in question to his brother for life and the remainder to the defendant, the Presbyterian Orphanage. Sometime after Elmer Fitterling's death the plaintiff herein was appointed administrator of his estate with the will annexed. The answer of the Presbyterian Orphanage of Missouri alleges that this appointment was made on January 9, 1933, but there is no evidence of this, nor, is this fact admitted in the briefs.

There was a decree introduced in evidence which recites that on January 17, 1933, M. S. Fitterling, by warranty deed, conveyed the land on which the barn was situated to the plaintiff and his wife. The decree also states that M. S. Fitterling died on the 24th day of December, 1933. This was not proof of these facts. However, there is evidence that soon after this deed was made (whenever that was) the plaintiff went to the office of the insurance company and, without having the policy in his possession (the same apparently having been lost or misplaced), asked the insurance company to reissue and transfer the insurance to him and his wife. By means of the information obtained from the written application for the original insurance, the company was able to make a copy of the insurance policy and delivered the copy to the plaintiff with the name of the insured, Elmer and M. S. Fitterling, stricken out and plaintiff's name as. the insured inserted in the policy.

The testimony of the plaintiff and an officer of the insurance company was to the effect that this policy was *reissued and transferred* to plaintiff and his wife. In other words that it was new insurance. What was actually the legal effect of this transaction, in view of the fact that the policy was originally issued to Elmer and M. S. Fitterling and their legal representatives and that plaintiff was then the administrator of Elmer Fitterling's estate, is not necessary to inquire into for, as hereinafter indicated, the case is decided on grounds not involving these circumstances.

. The insurance company was an assessment company and the policy could not be kept in force except by paying the assessments. Plaintiff, as administrator of the estate, paid one of these assessments because Elmer Fitterling was obligated to pay it during his lifetime. The balance of the assessments were paid by plaintiff out of his own funds. A fire occurred on June 27, 1936, destroying the barn insured.

The decree of the Circuit Court of Johnson County, which we have alluded to, dated June 22, 1936, was introduced in evidence by the Presbyterian Orphanage. This decree recites, among other things, that the deed from M. S. Fitterling to plaintiff, executed on the 17th day of January, 1933, was fraudulent and void as to the Presbyterian Orphanage and the same was set aside and for naught held as to it; that on the death of M. S. Fitterling, on December 21, 1933, the Presbyterian Orphanage became seized in fee simple of an undivided three-fourths interest in the land in question, under the terms of the will of Elmer Fitterling, "and that the pretended title attempted to be conveyed to the said undivided three-fourths interest in said land by said May Sylvester, to the defendants, Melville D. Fitterling and Lydia M. Fitterling, his wife, should be, and is divested out of the said Melville D. Fitterling and Lydia M. Fitterling, his wife, and vested in the Presbyterian Orphanage." It was also decreed that the Presbyterian Orphanage recover from the defendants M. D. Fitterling and his wife, three-fourths of the annual rental value of the premises from the first day of March, 1933 at the rate of $450 per annum.

It appears that the insurance company was summonded as garnishee in an effort to collect the money part of this judgment. What became of that proceeding is not shown in the evidence. It also appears that the insurance company filed a bill of interpleader, asking that M. B. Fitterling and the Presbyterian Orphanage interplead for the amount of the insurance in suit. What became of this suit is likewise not shown in the record. This present action to recover the amount of the insurance was instituted on September 8, 1936, by the plaintiff, against the defendant Johnson County Mutual Fire Insurance Company.

On October 12, 1936, the Presbyterian Orphanage filed a motion to be made party-defendant to this suit, claiming that it owned a three-fourths interest in the proceeds of the insurance. On October 14, 1936, said motion was sustained. The record fails to show any objection to the Presbyterian Orphanage being made party-defendant, or, any exception to the sustaining of said motion.

On October 12, 1936, the insurance company filed its answer, admitting the existence of the insurance; that the barn was destroyed by fire; that it was indebted either to the plaintiff or to the Orphanage in the sum of $500; that the Orphanage was claiming a three-fourths interest in the proceeds of the policy; that plaintiff was claiming the entire amount; that it did not know which of the two claimants was entitled to the money and prayed that the court require the orphanage to interplead in the action; that the insurance company be discharged from further liability on account of the policy and that it recover all of its costs and attorneys' fees. The fund was not tendered or paid into court by the company, nor, was it discharged.

On October 17, 1936, the Presbyterian Orphanage filed its answer

alleging that, at the time of the issuance of the policy to Elmer Fitterling and M. S. Fitterling, Elmer owned an undivided three-fourths and M. S. Fitterling owned an undivided one-fourth interest in the property insured; that Elmer Fitterling died on December 24, 1932; that Elmer Fitterling devised his interest in the property to M. S. Fitterling during his life and the remainder to the Orphanage in fee simple; that after the death of Elmer Fitterling and on January 9, 1933, M. D. Fitterling was appointed administrator, with the will annexed, of the estate of Elmer Fitterling, deceased, and duly qualified as such; that after said appointment plaintiff and M. S. Fitterling entered into a conspiracy to defraud and defeat the orphanage, the remainderman, of its rights under the will, carrying out said conspiracy on the 17th day of January; that nine days after his appointment as administrator a deed was executed by M. S. Fitterling purporting to convey to plaintiff and his wife all of said property described in the insurance policy; that plaintiff, as administrator of the estate paid the assessments on the policy out of funds of the estate while acting as administrator, and before making his final settlement as such had the policy changed into his name as administrator of the estate and took the policy over for the use and profit of the remainderman herein; that the defendant insurance company had no right to transfer said right to plaintiff in his individual capacity; that he is "estopped by law and equity from claiming the funds due on said policy after having paid assessments of and against the same out of the funds of the Elmer Fitterling Estate while he was acting as administrator;" that in carrying out the conspiracy to defraud the remainderman, plaintiff, as administrator, never at any time advised the remainderman of its rights; that it never knew at any time of its rights until about fifteen months after said administration had been closed; that upon learning of its rights in the property it immediately filed a suit in equity to cancel and set aside said deed as to the interest of Elmer Fitterling; that the court, on June 22, 1936, divested the title and interest of Elmer Fitterling out of plaintiff and his wife and vested the same in the defendant; that five days after the obtaining of said decree on the 27th day of June, 1936, the barn in question was destroyed by fire and the insurance became immediately due and payable; that this defendant demanded three-fourths of the money therefrom from the insurance company. It offered in its answer, to reimburse plaintiff for its *pro-rata* share of the assessments which he had paid on the policy since his discharge as administrator. It alleged the value of the barn to have been about $1000. Defendant then prayed:

"Wherefore, this defendant prays the court that the court order and direct the Johnson County Mutual Insurance Company to pay first, the taxes assessed, levied, due and payable upon the premises described herein, and that out of the remainder of said policy said

Johnson County Mutual Insurance Company be directed to pay to this defendant its *pro rata* share in said policy, and that the Johnson County Mutual Insurance Company as garnishee be directed to pay the remainder of said money to the Sheriff to apply upon the judgment and execution which is now in the hands of the Sheriff, and for all other and further relief as to the Court may seem meet and just.''

Plaintiff's reply consists of admissions of certain parts of the answer of the insurance company and a general denial as to the balance and as to the defendant, Presbyterian Orphanage of Missouri, admits that the value of the barn was about $1000, as stated in the answer of the orphanage; that Elmer Fitterling died on the 24th day of December, 1932, and denies each and every other allegation therein contained.

The court tried the case as one in equity. Plaintiff claims that this was done over his objection. We are of the opinion that all parties consented to that method of trying the cause. Plaintiff's attorney expressed the opinion that it was a suit at law and asked the court its view of it and the court stated that he considered it an equity case, ''in the nature of an interplea.'' Counsel for the orphanage stated that his theory was that it was a suit in equity. Counsel for plaintiff then stated: ''If we all agree it is a trial in equity, all right.'' The court then said: ''Very Well, is that all, Gentlemen?''

Had the case not been tried as one in equity the answer of the defendant, insurance company, could not have been considered in the nature of a bill of interpleader. There was no payment or offer to pay the money into court by the insurance company, there was no order of the court sustaining the bill and the insurance company was not discharged but took part in the trial of the cause. [Smith v. Grand Lodge A. O. U. W., 124 Mo. App. 181; McFarland, Adm., v. Creath, 35 Mo. App. 112, 121; 32 C. J., pp. 451, 455.] However that may be, we will treat the case in this court as it was considered by all parties at the trial, that is, that it was a proceeding in equity.

Plaintiff contends that the orphanage is not entitled to any of the proceeds of the reissued policy sued on for the reason that it was payable to the insured and the orphanage was not a party to it; that the evidence shows that there was no intention on the part of the contracting parties that the orphanage should have any interest therein.

If it were not that the facts in this case distinguish it from the ordinary run of cases of this kind, no doubt, plaintiff's contention would be well taken. [26 C. J., pp. 17, 18, 82, 83, 434, 435.] It is well settled that where one of two or more tenants in common insures his interest separately against loss by fire he is entitled to recover the loss. See 26 C. J., p. 435, where it is said: ''Where different persons have different interests in the same property, the insurance

taken by one in his own right does not in any way inure to the benefit of another of such persons." But this is not such a case. Plaintiff did not insure his and his wife's interest in the property, that interest having been a fee simple title to an undivided one-fourth interest in the property and a three-fourths interest therein during the life of M. S. Fitterling, who was apparently alive at the time the insurance was transferred. The "reissued" policy insured the entire interest in the property. It was held in Sampson v. Crogan, 21 R. I., 184, 187: "If a policy is issued to a life tenant for the full value of the fee, and this amount is recovered by him, he certainly ought to be held to be a trustee for the remainderman as to the excess of the amount received over the value of his life interest." In Clyburn v. Reynolds, 31 S. C. 91, it was said, l. c. 118, 119: "In the case of *Annelly* v. *DeSaussure* (26 S. C. 505), an insurance policy taken out by one tenant in common was held not to inure to the benefit of the co-tenant. One tenant in common is not in any sense a trustee for his co-tenant, and has no insurable interest in his share of the property. A life tenant, on the other hand, is a trustee for the remainderman, and is certainly liable for loss by fire caused by his negligence. He ought not to be allowed to put himself in a position in which he would have no motive for proper care of the estate by having a policy of fire insurance by which, in case of loss, he could substitute the full fee simple value of the buildings in place of his interest for life. We therefore think that a sound public policy requires that any money collected by a life tenant on a total loss by fire should be used in rebuilding, or should go to the remainderman, reserving the interest for life for the life tenant." [See, also, Green v. Green, 50 S. C. 514; Welsh v. London Assurance Corp. (Pa.), 25 Atl. 142; Grant et al. v. Buchanan et al. (Tex.), 81 S. W. 820; Millard v. Beaumond, 194 Mo. App. 69.]

While the facts in the case at bar are somewhat different from those in the Sampson and Green cases, the principle is applicable.

It appearing that it was the desire of the parties that the court adjudge the payment of the taxes and attorney's fees and, it being apparent that the rest of the decree relating to the division of the fund is in accordance with the law applicable to the situation, the judgment should be affirmed.

We disallow plaintiff's claim that, as it is admitted in the pleadings that the barn when insured was worth "about" $1000, he should be awarded $250 of the fund on the basis of his one-fourth interest in the property. There is no evidence as to the value of the barn being other than $500 when it was destroyed. Consequently, we are not called upon to decide what would have been the effect had evidence been introduced that it was worth $1000. We are of the opinion that the answer and the prayer thereto of the defendant orphanage is sufficient to support the relief granted by the court. [Dietz

v. Mound City M. F. & L. Ins. Co., 38 Mo. 55; Hutcherson v. Briscoe, 77 Mo. 373; Growney v. O'Donnell, 272 Mo. 167; Scott v. Davis, 198 Mo. App. 512.]

The judgment is affirmed. All concur.