647 S.E.2d 731

**OPHA L. KEITH ESTATE, by Sharon BUCKLAND, Executrix, Plaintiff Below,**

v.

**David W. KEITH, Defendant Below.**

**No. 33131.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 13, 2007.

Decided: April 19, 2007.

Joseph F. Aucremanne, Hinton, for the Plaintiff.

Barry L. Bruce, Thomas W. White, Anna B. Williams, Barry L. Bruce & Associates, L.C., Lewisburg, for the Defendant.

ALBRIGHT, Justice.

This case is before us on certified questions and presents the issue of whether, upon the destruction of the real property included in a life estate, a remainderman is entitled to the proceeds from a fire insurance policy that the life tenant applied for and purchased. Upon our careful consideration of this issue, we determine that under well-established principles of contract law a remainderman has no interest in or entitlement to the insurance proceeds issued in connection with an insurance policy which was procured by and entirely paid for by a life estate tenant.

## I. Factual and Procedural Background

In 1993, Emogene Keith, the mother of Petitioner David W. Keith, died. Under her last will and testament, Mrs. Keith devised a life estate to Opha L. Keith,[1] her husband and the Petitioner's father. Under this same testamentary document, the decedent bequeathed a remainder interest in the decedent's entire estate to Petitioner. The dece-

---

1. Opha Keith died in 2004 and Sharon Buckland was appointed as executrix pursuant to the provisions of his will.

dent's estate included real property located in Monroe County, West Virginia; a home located on that property; and various items of personal property contained within the home.

Sometime in 1989, Emogene and Opha Keith applied for and were issued a policy of insurance by Municipal Mutual Insurance Company ("Municipal Mutual"), which provided coverage for their home and personal property contained therein. On January 17, 2004, the home and personal property subject to the life estate were destroyed as a result of fire. Shortly thereafter, Opha Keith submitted a claim to his insurer for the losses resulting from the fire. On February 24, 2004, Municipal Mutual issued a check in the amount of $54,000, payable to Opha L. Keith, Emogene Keith, and David Keith. Emogene Keith's name was included on the proceeds check as the policy was never amended after her death to remove her as an insured. David Keith was included as a payee on the check based on his possession of a remainder interest in the property. By agreement of the parties, the original check issued by Municipal Mutual was voided and the entirety of the funds at issue have been deposited with the Circuit Court Clerk of Monroe County pending resolution of this dispute.

By order entered on February 6, 2006, the Circuit Court of Monroe County certified the following questions:

1. In the event that certain improvements to real estate in the possession of the life tenant, insured against fire on a policy obtained by the life tenant under which only the life tenant is a beneficiary, are destroyed by fire, does the remainderman have an interest in the insurance proceeds though he is neither a named insured or paid any premiums?

2. In the event that the remainderman is determined to have an interest in the insurance proceeds, is West Virginia Code § 43–2–1, et seq., appropriate to determine the share of the proceeds paid to the remainderman?

3. If West Virginia Code § 43–2–1 et seq., is deemed to be an appropriate method to calculate the remainderman's share in the insurance from the loss of the structure, is this also applicable to the loss of personal property on the premises?

4. In the event that West Virginia Code § 43–2–1 et seq., is determined to be the appropriate method to calculate the remainderman's share of the insurance proceeds, is the remainderman precluded from pursuing a negligence claim against the life tenant for the loss of the improvements?

By order dated June 28, 2006, this Court accepted the certified questions and docketed the matter for resolution. We proceed to address the questions certified to us from the circuit court.

## II. Standard of Review

■ As we recognized in syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."

## III. Discussion

As Petitioner acknowledges, courts have adopted two distinct approaches to resolve the issue of a remainderman's entitlement to insurance proceeds where a life tenant insures the property in his name and for his own benefit and pays the premiums for such policy from his own funds. Petitioner advocates that we adopt the admittedly minority view, which treats the life tenant as a quasi-trustee of the remainderman, and consequently reasons that the remainderman is entitled to the proceeds.[2] In contrast, the prevailing view analyzes the issue pursuant to settled contractual principles to conclude that the life tenant, as the party who entered into a contract of insurance for his personal benefit, is solely entitled to the insurance proceeds when the property subject to the life estate is destroyed. *See generally* 51 Am.Jur.2d *Life Tenants and Remaindermen* § 182 (2000); *Forbes v. American Int'l Ins.*

---

**2.** *See, e.g., Crisp Co. Lumber Co. v. Bridges,* 187 Ga. 484, 200 S.E. 777, 778 (1939); *Fitterling v.*

*Johnson Co. Mut. Fire Ins. Co.,* 232 Mo.App. 805, 112 S.W.2d 347, 350 (1938).

*Co.*, 260 Md. 181, 271 A.2d 684, 686 (1970) (citing 126 A.L.R. 345).[3]

This is a case of first impression as there are no West Virginia cases that address whether a remainderman is entitled to any portion of the insurance proceeds paid out on a policy issued to a life tenant.[4] Our sister state of Virginia has addressed the issue and determined that a "life tenant was under no obligation to insure the property for the benefit of the remaindermen." *Thompson v. Gearheart*, 137 Va. 427, 119 S.E. 67, 68 (1923). In explanation of its conclusion, the court reasoned:

> Each of them had an insurable interest in the property, but a policy in the name of one could not cover the interest of the other. The nature and effect of an insurance contract is to indemnify the insured against loss or damage, and not some one else who is not a party to the contract; nor has such other party any lawful claim upon the amount realized by the assured under the policy.

*Id.* at 68.

An oft-quoted explanation for this result is stated in *Farmers' Mutual Fire & Lightning Insurance Co. v. Crowley*, 354 Mo. 649, 190 S.W.2d 250 (1945):

> The insurance policy is a personal contract; both the life tenant and the remainderman have insurable interests in the property; if the life tenant procures the insurance for his personal indemnity, the remainderman, who did not procure the insurance, has no cause for complaint, even if the proceeds of the life tenant's insurance contract exceed the sum which would indemnify him for his personal loss; *the proceeds are of the insurance contract, not*

> *of the property, and do not stand in the place of the property destroyed.*

*Id.* at 253 (emphasis supplied).

Expounding in a similar vein, a Massachusetts court articulated the following explanation of why the life estate purchaser is entitled to the full amount of the insurance proceeds upon the property's destruction:

> The fact that the property was insured by the life tenant for its full value is not enough to show that he [life tenant] intended to cover the interest of the remainderman. If a life tenant, who has insured for his own benefit, receives from the insurers more than the value of the life tenancy, that is a matter between the parties to the contracts of insurance and creates no claim in favor of the remainderman in the excess paid over the value of the life tenancy in the property. *The underlying principle is that fire insurance policies are personal contracts providing for the payment of indemnity to the insured in case of loss, and the amount received does not stand for nor represent the property damaged or destroyed although the measure of indemnity depends upon the determination of the value of the interest of the insured in the property covered by the policies.* In a word, the money received by a life tenant from his own contracts of insurance belongs to him, and he cannot be compelled to hold the money as though it were substituted for the property or as though it were the proceeds of the property.

*Converse v. Boston Safe Deposit & Trust Co.*, 315 Mass. 544, 53 N.E.2d 841, 843 (1944) (emphasis supplied); *accord Gearheart*, 119 S.E. at 68 (explaining why a trust relationship does not arise by virtue of the life tenant's receipt of insurance proceeds);[5] 51

---

**3.** There are three recognized exceptions to the majority position that require a life tenant to provide insurance for the benefit of the remainderman. These exceptions arise (a) when the instrument creating the estate expressly provides accordingly; (b) if the life tenant and the remainderman agree to this requirement; (c) or if a fiduciary relationship exists between the life tenant and the remainderman. *See* 51 Am.Jur.2d at § 182; *Ellerbusch v. Myers*, 683 N.E.2d 1352, 1354 (Ind.App.1997).

**4.** In *Keesecker v. Bird*, 200 W.Va. 667, 490 S.E.2d 754 (1997), we recognized the two approaches to

this issue when commenting on whether a life tenant is obligated to insure the life estate for the remainderman's benefit. *Id.* at 680–81 n. 14, 490 S.E.2d at 767–68 n. 14.

**5.** "Nor can the defendant (life estate holder) be converted into a trustee for the plaintiff (remainderman) by the mere fact that the amount which she received was equal to the full value of the house. It was paid to and received by her as indemnity for the loss which she had sustained, and, as already observed, does not stand in the place of the property... If the contract is one of indemnity to the insured for the loss sustained by

Am.Jur.2d *Life Tenants and Remaindermen* § 182 (observing "that without an express covenant the tenant for life is not liable to rebuild a house destroyed by fire not his or her fault, and a life tenant is in no sense a trustee for the remainderman. If the life tenant is not bound to rebuild, he or she certainly is not bound to insure for the benefit of the remainderman.").

▉ As support for his position that this Court should reject the contractual approach favored by the majority and adopt the quasi-trust relationship approach taken by the minority, Petitioner looks to this Court's recognition in *Keesecker v. Bird*, 200 W.Va. 667, 490 S.E.2d 754 (1997), that a life tenant has a duty to preserve the corpus of the estate and not to commit waste. *Id.* at 682, 490 S.E.2d at 769. Drawing on this obligation not to waste, Petitioner suggests that the quasi-trustee approach is the approach more in accord with the duty not to commit waste.[6] Petitioner contends essentially that it is inequitable to allow a life estate holder, whose interest in the property is less than that of the remainderman, to benefit from the destruction of the estate. Consequently, he advocates that the remainderman should, under principles of public policy, receive a share of the insurance proceeds that are disbursed upon the destruction of the estate property.

At least one court has squarely addressed "the apparent inequity of the [majority] rule." *Ellerbusch v. Myers*, 683 N.E.2d 1352, 1355 (Ind.App.1997). In adopting the majority rule, the court in *Ellerbusch* reasoned away the seeming harshness of the position by explaining that "a remainderman may protect his interest through an agreement with the life tenant that the latter carry insurance for the remainderman's benefit" and each party "can insure for himself." *Id.* at 1355. In this fashion, the court acknowl-

edged that there are ways to prevent the majority position from operating to the disadvantage of the remainderman.

There are three well-established exceptions to the majority rule that the remainderman does not have an interest in insurance proceeds recovered upon the destruction of the life estate. Those exceptions to the rule operate when (1) the instrument creating the estate expressly provides that the life tenant will insure the property for the benefit of the remainderman; (2) the life tenant and the remainderman agree to this requirement; or (3) if a fiduciary relationship exists between the life tenant and the remainderman. *See* 51 Am.Jur.2d at § 182; *Ellerbusch*, 683 N.E.2d at 1354.

▉ Having considered the arguments underlying the majority and minority positions on the issue presented by the first certified question, we believe that the better-reasoned approach is to apply contractual precepts to resolve the issue of a remainderman's entitlement to insurance proceeds paid out in connection with the destruction of the property subject to the life estate. Accordingly, we adopt the majority position to conclude that where a life tenant insures the property subject to the life estate in his own name and for his own benefit and pays the premiums from his own funds, he is solely entitled to the proceeds of the insurance upon a loss absent a provision in the instrument creating the estate that requires the life tenant to insure the estate for the benefit of the remainderman; an agreement between the life estate tenant and the remainderman that the estate will be insured for the benefit of the remainderman; or the existence of a fiduciary relationship between the remainderman and the life tenant.

While we are certainly not unmindful of the seeming inequities of the situation pre-

---

him, it is difficult to see how a sound public policy could be subserved by holding that he shall use what belongs to him for the benefit of some one else."

119 S.E. at 68 (quoting *Harrison v. Pepper*, 166 Mass. 288, 44 N.E. 222 (1896)).

6. We note that the facts of this case do not present evidence that the life tenant had committed any acts that would constitute waste, which

is defined as "'any permanent or lasting injury done or permitted to be done by the holder of the particular estate to lands, houses, or other corporeal hereditaments, to prejudice of the heir or of him in remainder or reversion.'" *Keesecker*, 200 W.Va. at 682, 490 S.E.2d at 769 (quoting *Gwinn v. Rogers*, 92 W.Va. 533, 540, 115 S.E. 428, 430 (1922)).

sented by this case where the value of a remainderman's inheritance is reduced through no fault of his own, a remainderman is not without the means to prevent this unfortunate result. As the Indiana appellate court made clear in *Ellerbusch*, the seeming harshness of the majority rule is ameliorated by the fact that the remainderman can procure insurance on his interest in the estate property and thereby avoid the very inequity about which he complains. 683 N.E.2d at 1355.

Having answered the first certified question in the negative, we do not proceed to the remaining questions that were conditionally certified based upon our response to the first question.

Certified question answered.