[No. B192590. Second Dist., Div. Five. June 25, 2007.]

ANN BURNS et al., Plaintiffs and Appellants, v.
CALIFORNIA FAIR PLAN ASSOCIATION et al., Defendants and
Respondents.

648

## Counsel

Shernoff, Bidart & Darras, Michael J. Bidart, Ricardo Echeverria; The Ehrlich Law Firm, Jeffrey Isaac Ehrlich; Girardi & Keese, Thomas V. Girardi, Amanda L. McClintock; Engstrom, Lipscomb & Lack, Jerry A. Ramsey and Brian J. Heffernan for Plaintiffs and Appellants.

Lewis, Brisbois, Bisgaard & Smith, Richard B. Wolf and Gerard A. Lafond, Jr., for Defendant and Respondent California FAIR Plan Association.

Ault, Schonfeld, Jordan & Munro, R. Michael Jordan and David M. Plouff for Defendant and Respondent Clarendon National Insurance Company.

## Opinion

**KRIEGLER, J.**—The holder of a life estate on a residence and a trust holding the remainder interest separately purchased fire insurance policies on the dwelling from different insurance companies. When the home was destroyed by fire, the life tenant and the trust brought this action, seeking to each obtain the full value of the residence on their respective insurance policies, a total amount in excess of the damage to the residence. Invoking the "other insurance" provision of each policy, the insurers moved for summary judgment on the basis that they had fulfilled their contractual obligations by paying the life tenant and the trust on a pro rata basis according to the value of their insured interests in the destroyed property. We hold that multiple insureds cannot recover more than the value of the property destroyed on a fire insurance claim resulting from a single occurrence. We therefore affirm the trial court's order granting summary judgment in favor of the insurers.

## FACTS

Ann Burns held a life estate in the residence located at 707 Valparaiso Drive, Claremont. Mitchell Weiss was a trustee of the Kent Burns Trust (the Trust),[1] which held the remainder interest in the property. Burns obtained insurance on her interest in the residence through California FAIR Plan (Fair Plan). The Trust separately insured its interest by a policy issued by Clarendon National Insurance Company (Clarendon).

The residence was destroyed by fire in 2003. Burns and the Trust submitted claims to their respective insurers. The Trust obtained an estimate to demolish and reconstruct the house for $480,721.55. Burns obtained an estimate of $474,000 as the replacement value of the house.

The insurers determined that Burns and the Trust were not both entitled to the full insured value of the property on the insurance policies. Instead, the insurers determined that Burns and the Trust should recover on their interests on a pro rata basis. As a result, Burns was paid $279,410 by Fair Plan. Clarendon paid the Trust $198,792.99.

Burns and the Trust filed this action alleging causes of action for breach of the duty of good faith and fair dealing and breach of contract against the insurers. They each sought full recovery on their respective insurance policies, rather than the pro rata payout by the insurers. The trial court granted summary judgments in favor of the insurers on the following bases: both policies contained the same "pro rata liability clause"; the policies complied with the mandatory provisions of Insurance Code sections 590, 591, 2070, 2071;[2] and the "other insurance" clauses of each policy called for pro rata payment of 100 percent of the loss between the applicable policies. Burns and the Trust timely appeal from the judgment.

## DISCUSSION

Burns and the Trust argue they held separately insurable interests in the property and each was required to obtain insurance in order to protect their respective interests. The trial court's ruling that pro rata payments were appropriate under the insurance policies made it impossible for Burns and the Trust to fully protect their respective interests, as neither a life tenant nor remainderman has a claim to insurance proceeds obtained by the other estate holder, and neither has an obligation under California law to repair destroyed

---

[1] Because Weiss is involved in this action only in a representative capacity, we will refer to the Trust as a party for clarity.

[2] Unless otherwise indicated, all statutory references are to the Insurance Code.

property with insurance proceeds. The estate holders argue that other jurisdictions allow a life tenant to recover insurance proceeds equal to the value of the property destroyed. They further argue that pro rata payment is permissible only when there is "double insurance" as defined in sections 590 and 591. Finally, Burns and the Trust argue the policy language did not authorize the insurers to make pro rata payment to their policyholders on the ground there was another party with an insurable interest and insurance coverage.

## A. Summary Judgment Standard of Review

Summary judgment is properly granted if the record demonstrates that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment " 'may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citation].' [Citations.]" (*Stonegate Homeowners Assn. v. Staben* (2006) 144 Cal.App.4th 740, 750 [50 Cal.Rptr.3d 709].) If the defendant has made this showing, "the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).)

" 'On the grant of summary judgment, the appropriate standard of review is de novo.' (*Schachter v. Citigroup, Inc.* (2005) 126 Cal.App.4th 726, 733 [23 Cal.Rptr.3d 920].)" (*Reyes v. Van Elk, Ltd.* (2007) 148 Cal.App.4th 604, 609 [56 Cal.Rptr.3d 68].)

## B. The Estate Holders' Insurable Interests

Central to the position of Burns and the Trust is the notion that each held a separately insurable interest in the destroyed property. Under California law, this portion of their argument is indisputably correct, and the insurers do not argue otherwise.

■ "Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest." (§ 281.) "In common parlance, we speak of a house as being insured, but, strictly speaking, it is not the house but the interest of the owner therein that is insured, and, whether that interest is founded upon a legal title, an equitable title, a lien, or such other lawful interest therein as will produce a direct and certain pecuniary loss to the insurer by its destruction, he has an insurable interest therein." (*Davis v. Phoenix Ins. Co.* (1896) 111 Cal. 409, 414 [43 P. 1115].)

In *Corder v. McDougall* (1932) 216 Cal. 773, 773–774 [16 P.2d 740] (*Corder*), a life tenant obtained insurance on a dwelling and improvements. The life tenant collected on the insurance policy after the property was destroyed by fire, and when the life tenant died, the proceeds passed to his estate. The remainderman demanded payment of the insurance proceeds from the estate, on the basis that the payout substituted for the destroyed property, which had passed to the remainderman upon the death of the life tenant.

Our Supreme Court held "there had been no transmutation of the destroyed buildings into money as a substitute," and the life tenant was not obligated to insure the property for the benefit of the remainderman, as " '[e]ach of them had an insurable interest in the property, but a policy in the name of one could not cover the interest of the other. The nature and effect of an insurance contract is to indemnify the *insured* against loss or damage, and not someone else who is not a party to the contract; nor has such other party any lawful claim upon the amount realized by the assured under the policy.' " (*Corder*, *supra*, 216 Cal. at p. 774; see also 51 Am.Jur.2d (2000) Life Tenants and Remaindermen, § 182, pp. 366–367 ["The general rule is that both a life tenant and a remainderman have an insurable interest in property in which a life interest and a future interest have been created."].)

While an "arrangement obligating the life tenant so to protect the interest of the remainderman might be entered into," there was no such obligation in *Corder*. (*Corder*, *supra*, 216 Cal. at p. 775.) As such, the remainderman had no interest in the insurance proceeds. (*Id.* at pp. 774–775; see also *Russell v. Williams* (1962) 58 Cal.2d 487, 490–491 [24 Cal.Rptr. 859, 374 P.2d 827] [fire insurance indemnifies the owner of an interest in property for a loss, but is not a substitute for the property; absent a contractual obligation to insure or other equitable considerations, insurance proceeds are not subject to claims by others who also have an interest in the insured property].)

In light of the discussion in *Corder*, Burns and the Trust had separately insurable interests in the Claremont property.

### C. *The Ability to Protect an Interest in Insured Property*

■ Having established that Burns and the Trust each had an insurable interest in the Claremont property, they contend that the approach of the trial court—allowing the insurers to pay on a pro rata basis—deprived them of the ability to fully protect their insurable interests. Burns and the Trust contend the insurers were each obligated to fully compensate them for their loss in the

fire, even if their combined recovery would approximately double the actual damage caused by the fire. While it cannot be denied that Burns and the Trust had separately insurable interests, it does not follow that both could recover the maximum allowed under their respective insurance policies without regard to the value of the destroyed property. Our Supreme Court long ago recognized that the nature of insurance does not provide for recovery in excess of the value of the property destroyed where there is but one loss.

"Insurance is a contract whereby one, for a consideration, undertakes to compensate another if he shall suffer loss. It is a contract of indemnity. [¶] 'This principle underlies the contract, and it can never, without violence to its essence and spirit, be made by the assured a source of profit, its sole purpose being to guarantee against loss or damage.' [Citation.]" (*Davis v. Phoenix Ins. Co., supra*, 111 Cal. at p. 415.) If an insured's interest "extends to the whole of the subject matter of the property," the insured may recover up to the value of the property, subject to any policy limitation. (*Ibid.*) However, if the interest of the insured is less than the whole of the property, "his right is limited, not by the value of the property, but by the value of his interest. The very meaning of the term '*indemnity*' excludes all idea of profit to the insured." (*Ibid.*) To permit a recovery for more than the value of the insured's interest "would greatly tend to the destruction of like property under like circumstances, and open the door and tempt men to enter therein for fraudulent purposes." (*Id.* at p. 416.)

Neither Burns nor the Trust have an interest that "extends to the whole of the subject matter of the property." (*Davis v. Phoenix Ins. Co., supra*, 111 Cal. at p. 415.) The interest of each in the Claremont property was necessarily less than the total value of their combined interests, as Burns's life estate by definition was of limited duration, and the Trust's remainder interest was dependent on how long Burns survived.

As discussed more fully below, Fair Plan determined that the actual cash value at the time of loss was $474,000; Clarendon received an estimate for reconstruction in the amount of $486,080.46. Had each claimant been compensated at these amounts, recovery would be for $960,080.46, an amount far in excess of the loss suffered. An award in this amount cannot be reconciled with the language in *Davis v. Phoenix Ins. Co., supra*, 111 Cal. at page 416.

### D. *Authority from Other Jurisdictions*

Relying on out-of-state authorities, Burns and the Trust argue that the owner of a life estate may insure his or her estate for the full value of the property and be compensated in that amount. From this premise, they reason each was entitled to recover their full policy limits without regard to any

payment to the other insured. The authorities cited do hold that a life tenant may insure the property to its full value. However, the out-of-state authorities do not address the issue presented here, as none of the cases cited involve a fact pattern in which property is destroyed in a single occurrence and the life tenant and remainderman have separate insurance. To the contrary, none of the foreign authorities cited involves multiple claims for insurance proceeds under separately obtained policies.

In *Ellerbusch v. Myers* (Ind.Ct.App. 1997) 683 N.E.2d 1352, 1353–1354, the court held that remaindermen had no claim to fire insurance proceeds collected by the life tenant when the improvements on the estate were destroyed. Adopting the rule in the majority of states, the court held that where a life tenant insures the property in his own name and for his own benefit and pays the premiums from his own funds, the life tenant is entitled to the entire proceeds of the insurance upon a loss to the property, even if the insurance covers the full worth of the property. (*Id.* at pp. 1354–1355.) The court was not confronted with a situation in which the life tenant and remaindermen each had insurance, nor did it speak to that issue.

The decision in *Home Ins. Co. v. Adler* (1973) 269 Md. 715 [309 A.2d 751] is similar to *Ellerbusch*. A life tenant died 19 minutes after a fire began in the insured property subject to her life estate. The insurance company refused to pay for the destroyed dwelling, arguing that whatever damage was done to the property in the fire "fell upon the remaindermen who are not parties to the suit." (*Home Ins. Co. v. Adler, supra*, 309 A.2d at p. 752.) The court rejected the argument. "It is, however, the rule in many jurisdictions, including Maryland, that a life tenant who insures the property in his own name in the whole value of the fee is not precluded from recovering the full amount of the policy proceeds." (*Id.*, 309 A.2d at p. 753.) Again, this decision had no issue of multiple insurance policies covering the same loss on behalf of the life tenant and holder of the remainder interest.

Similarly, in *Crook v. Hartford Fire Ins. Co. et al.* (1935) 175 S.C. 42 [178 S.E. 254], the South Carolina Supreme Court held that both a life tenant and remainderman may obtain fire insurance to protect their respective interests. Factually, there was only one insurance policy on the property. The court in *Crook* was thus not called upon to determine whether a recovery in excess of the value of the property destroyed was proper where there was more than one policy of insurance. (See also *Keith Estate ex rel. Buckland v. Keith* (2007) 220 W.Va. 295, 299 [647 S.E.2d 731] ["Accordingly, we adopt the majority position to conclude that where a life tenant insures the property subject to the life estate in his own name and for his own benefit and pays the premiums from his own funds, he is solely entitled to the proceeds of the insurance upon a loss absent a provision in the instrument creating the

estate that requires the life tenant to insure the estate for the benefit of the remainderman; an agreement between the life estate tenant and the remainderman that the estate will be insured for the benefit of the remainderman; or the existence of a fiduciary relationship between the remainderman and the life tenant."].)

The trial court correctly noted that if Burns were the only insured party in this action, she could recover up to the value of her policy limits. In order to determine if Burns and the Trust were both entitled to recover up to their policy limits, without regard to the other, we turn to distinct concepts in insurance law: "double insurance" and "other insurance."

E. *Double Insurance Under Sections 590 and 591*

Applying the maxim *expressio unius est exclusio alterius*, Burns and the Trust argue that pro rata payments on fire insurance are appropriate only when there is "double insurance" as defined in sections 590 and 591. Because the insurance policies in this case did not constitute double insurance, they argue pro rata payments were not permitted. They argue that application of pro rata payments outside of a situation involving double insurance runs afoul of the legislative intent behind sections 590 and 591.

■ "Double insurance exists where the same person is insured by several insurers separately in respect to the same subject and interest. (Ins. Code, § 590.)" (*Mission Ins. Co. v. Hartford Ins. Co.* (1984) 155 Cal.App.3d 1199, 1205 [202 Cal.Rptr. 635].) "In case of double insurance, the several insurers are liable to pay losses thereon as follows: [¶] (a) In fire insurance, each insurer shall contribute ratably, without regard to the dates of the several policies." (§ 591, subd. (a).) Sections 590 and 591 are incorporated into the standard form fire insurance policy set forth in section 2071.

We agree with Burns and the Trust that this case does not involve double insurance, because "the same person" was not insured by Fair Plan and Clarendon, although the insurance was "in respect to the same subject and interest." (§ 590.) However, we reject the *expressio unius est exclusio alterius* argument that pro rata payments are only permitted where there is double insurance as defined in sections 590 and 591.

■ "Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary." (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505].) *Expressio unius est exclusio alterius* "is no magical incantation, nor does it refer to an immutable rule. Like all such

guidelines, it has many exceptions . . . ." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157, 580 P.2d 657].) The maxim does not apply where its application would run counter to a well-established principle of law (*id.* at p. 540, fn. 10) or where the operation of the rule " 'would contradict a discernible and contrary legislative intent.' " (*In re Michael G.* (1988) 44 Cal.3d 283, 291 [243 Cal.Rptr. 224, 747 P.2d 1152].)

■ The interpretation of sections 590 and 591 suggested by Burns and the Trust limiting pro rata payment on insurance contracts to double insurance situations (1) would run afoul of a well-established rule of law and (2) is contrary to a discernible legislative intent in the area of "other insurance." The argument runs afoul of the well-established rule of law that insurance proceeds are to indemnify, not to generate a profit. If Burns and the Trust could each recover the value of the destroyed property, the insurance payout would be more than the amount of the loss in violation of the holding in *Davis v. Phoenix Ins. Co., supra,* 111 Cal. at page 415. Moreover, as discussed more fully below, there is a discernible legislative intent to allow for proportionate payment of insurance benefits other than where there is double insurance, such as where there is "other insurance" as defined in sections 2070 and 2071.

## F. *Other Insurance*

Fire insurance policies on California properties must be on a standard form, including language adopted by the Legislature. (§ 2070.) The standard form policy language as to the concept of "other insurance" is set forth as follows in section 2071 as follows: "This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not." Both policies in this case included "other insurance" provisions.[3]

The Fair Plan policy insuring Burns contained the following "other insurance" provision:

"a. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this policy. If you do, we

---

[3] In their reply brief, Burns and the Trust argue that the insurers could have limited the amount of insurance by an endorsement attached to the policy. (§ 2071 ["Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto."].) Setting aside the failure to raise this issue in the opening brief, we find the language inapposite to the issue presented. The insurers have not attempted to prohibit other insurance or limit the amount of insurance. To the contrary, each is paying the amount due under the policy, subject to the plain language of section 2071 allowing for pro rata liability.

will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Liability under this policy bears to the Limits of Liability of all policies covering on the same basis.

"b. If there is other insurance covering the same loss or damage, other than described in a/ above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But, we will not pay more than the applicable Limit of Liability."

The Clarendon policy contained the following "other insurance" provision: "Other Insurance. If the property covered by this policy is also covered by other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property."

■ " 'Most insurance policies contain "other insurance" clauses that attempt to limit the insurer's liability where other insurance covers the same risk. Such clauses attempt to control the manner in which each insurer contributes to or shares a covered loss.' [Citation.]" (*Fire Ins. Exchange v. American States Ins. Co.* (1995) 39 Cal.App.4th 653, 659, fn. 1 [46 Cal.Rptr.2d 135].) "Historically, 'other insurance' clauses were designed *to prevent multiple recoveries* when more than one policy provided coverage for a given loss." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶ 8:10, p. 8-3.) " '[T]he application of "other insurance" clauses requires, as a foundational element, that there exist multiple policies applicable to the *same loss*.' [Citation.]" (*Fire Ins. Exchange v. American States Ins. Co., supra,* 39 Cal.App.4th at p. 660.) "Where, as here, two insurance policies apply to the same risk, the relative application thereof is generally determined by the explicit provisions of the respective 'other insurance' clauses." (*Continental Casualty Co. v. Pacific Indemnity Co.* (1982) 134 Cal.App.3d 389, 394 [184 Cal.Rptr. 583].) "This is true even where the policies cover different *insureds*. The fact they cover the *same risk* makes the insurers 'coinsurers' as to that risk." (Croskey et al., *supra,* ¶ 8:10, p. 8-3, citing *Fire Ins. Exchange v. American States Ins. Co., supra,* 39 Cal.App.4th at p. 660.)

"Other insurance" falls into three categories. First, there are "pro rata" provisions, "which look to limit the insurer's liability to 'the total proportion that its policy limits bear to the total coverage available to the insured.' " (*Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th 739, 744 [89 Cal.Rptr.2d 415].) Second, there is a category known as " 'excess only,' " "which require[s] the exhaustion of other insurance; in effect, this insurer does not provide primary coverage but only acts

as an excess insurer." (*Ibid.*) Third, there is a category of " 'escape' " clauses that extinguish "the insurer's liability if the loss is covered by other insurance." (*Ibid.*)

The "other insurance" provisions of sections 2070 and 2071 evidence a legislative intent to allow pro rata payment of claims even where there is no "double insurance" and where there are different insureds. The language of both policies in this case was consistent with sections 2070 and 2071, which expressly authorize proportionate payment where there is "other insurance." We reject the argument that pro rata payment of fire insurance claims is only permissible where there is "double insurance."

G. *The Sums Paid by the Insurers Fully Compensated for the Loss Incurred*

1. *Calculation of Total Liability*

Under the Fair Plan policy, Burns was entitled to recover the actual cash value of loss due to fire, but not the cost of replacement. Under the policy, Fair Plan was not obligated to pay more than the limit of liability. The estimated cash value of the property was $474,000, a figure Burns does not dispute.

Clarendon's policy with the Trust provided for coverage limited to liability of $330,000, subject to an excess replacement cost of 100 percent, i.e., an additional $330,000. Coverage was expressly limited to the Trust's interest in the property up to the limit of liability. Property loss for buildings was covered at the actual cash value of the damage unless repair or replacement was complete, in which case the insurer paid at replacement cost. The insured was entitled to make a claim for actual cash value, and within 180 days, the insured could make an additional claim for liability for replacement cost. The estimated cost of replacement was $486,080.46.

The insurers calculated their proportionate liability by reference to the total coverage between the two policies. Coverage was $330,000 under the Clarendon policy and $477,000 under the Fair Plain policy, for a total of $807,000.

Fair Plan's pro rata liability was calculated at 59 percent, by dividing its policy liability of $477,000 by $807,000. Fair Plan paid Burns 59 percent of $474,000, minus a $250 deductible, or $279,410.

Dividing Clarendon's maximum liability of $330,000 by the total coverage of $807,000 yielded a figure of 41 percent proportionate liability. Given that

the Trust could later make a claim for replacement cost, Clarendon used the $486,080.46 cost of replacement, multiplied by 41 percent, and after a $500 deductible, arrived at a payment of $198,792.99 to the Trust.

### 2. *The Fair Plan Payment to Burns*

Fair Plan's "other insurance" was of the "excess only" type, in that if there were other insurance covering the same loss or damage, Fair Plan was obligated to pay only for the amount of the covered loss in excess of the amount due from the other insurance. The other insurance in this instance was the Clarendon policy, which paid the Trust $198,792.99; Fair Plan's liability to Burns was the excess over that paid by Clarendon, up to Burns's policy limit of $477,000. Payment to Burns of $279,410 satisfied Fair Plan's liability under the "excess only" form of "other insurance," because that amount, when combined with Clarendon's payment to the Trust, equaled the limit of her policy.

Alternatively, if calculated strictly on a pro rata basis, the result as to Burns is the same under the facts of this case. As set forth above, Fair Plan's liability on a pro rata basis was 59 percent of Burns's policy limit. The payment of $279,410 was 59 percent of Fair Plan's liability. Burns was fully compensated within the meaning of the "other insurance" provision of her policy, as well as the proportionate payment as set forth in sections 2070 and 2071.

### 3. *The Clarendon Payment to the Trust*

The "other insurance" provision of the Clarendon policy was of the "pro rata" variety, which limited Clarendon's liability to the proportion of its policy limit to the total coverage. Calculation of Clarendon's liability at 41 percent of the Trust's policy limits was consistent with the policy language, as well as sections 2070 and 2071.

### 4. *Payments Equaled the Full Amount of the Loss*

■ Combined, Burns and the Trust were paid $478,202.99. This amount was more than the actual cash value of the destroyed property of $474,000 and more than a recent reconstruction estimate of $449,508.59. Significantly, neither Burns nor the Trust presented evidence in opposing summary judgment that their respective interests in the property were valued at more than the amounts received from their insurers. We conclude the trial court correctly ruled that the insurers fully paid their obligations under the policies, and summary judgment in favor of the insurers was properly granted.

## DISPOSITION

The judgment is affirmed. California Fair Plan and Clarendon National Insurance Company are awarded their costs on appeal.

Turner, P. J., and Armstrong, J., concurred.